12123

ANDERSON v. THOMAS *ET AL.*

(136 S. E., 387)

1. GAMING—EVIDENCE HELD FOR JURY, IN ACTION ON NOTE GIVEN FOR FERTILIZER (CIV. CODE 1922, § 5166).—In action on note given as part of contract for purchase of fertilizers, evidence of making of contract and intent of parties that it should be actually performed *held* sufficient to go to the jury, under Civ. Code 1922, § 5166.

2. GAMING—IN ACTION ON NOTE GIVEN FOR FERTILIZER, INSTRUCTION THAT DELIVERY WOULD TAKE CONTRACT OUT OF WAY OF CONTENTION THAT IT WAS A GAMBLING CONTRACT HELD PROPER.—In action on note given as part of contract to purchase fertilizer, instruction that, if fertilizer was actually delivered, such fact would take the contract out of the way of any contention that it was a gambling contract *held* proper and, in any event, not prejudicial.

3. GAMING—IN ACTION ON NOTE, PLAINTIFF NEED NOT ALLEGE FACTS RELIED ON TO SUSTAIN VALIDITY OF NOTE, UNDER STATUTE (CIV. CODE, 1922, § 5166; CODE CIV. PROC. 1922, § 431).—Plaintiff, in action on note, in order to come in under Civ. Code, 1922, § 5166, need not allege in his complaint facts relied on to sustain note, legality of which was first questioned in answer, in view of code Civ. Proc. 1922, § 431.

Before SEASE, J., Marlboro, April, 1925. Affirmed.

Action by H. H. Anderson against J. W. Thomas, in which Chanie Thomas and Grace Thomas Kennedy, executrices, were substituted as parties defendant. From a judgment for plaintiff, defendants appeal.

The following is the note and the contract for South America nitrate of soda, the charge of the trial court, defendant's third exception, and a portion of appellant's argument relative to alleged error in the court's charge:

Copy of Note

"Bennettsville, S. C., May 24, 1920.

"One year after date I, or either of us, promise to pay to the order of Freeman-Moore Company five hundred no/100 dollars, in United States gold coin or its equivalent.

"Negotiable and payable at the Bank of Marlboro, at Bennettsville, S. C.

"For value received, with interest at 8 per cent. per annum after maturity and until paid. And in case said debt is not paid at maturity, we promise to pay all expenses incurred in collecting same, including 10 per cent. attorney's fees for collection, and attorney's fees for any litigation concerning said debt.

"(Signed) J. W. Thomas.

"Due May 24, 1921."

Contract for South American Nitrate of Soda

"New York, May 17, 1920.

"T. B. McLaurin, Bennettsville, S. C., has purchased from W. R. Grace & Co., New York.

"Received at N. Y., May 24, 1920. Answered ————.

"Quantity: Four hundred thousand (400,000) lbs.

"Weight: Tons to be 2,240 pounds each, gross weight delivered, less tare of seven-tenths of 1 per cent.

"Port: Charleston, S. C.

"Expected to Arrive: 200,000 lbs. April—200,000 lbs. May, 1921.

"Terms: Net cash payable by sight draft attached to bill of lading.

"Price: Three dollars and ninety cents ($3.90) f. o. b. cars tagged per 100 lbs. net weight ex vessel or ex store.

"Analysis: To test on arrival 95 per cent. nitrate of soda, as per sample drawn at time of shipment, as per Stillwell & Gladding's analysis. If of inferior assay, buyers to have the benefit of usual West Coast allowance.

"Sale is also subject to the following express terms and conditions:

"Shipment by steamers or equivalent sailers due to arrive from the West Coast of South America at the port or ports during the months herein mentioned. No arrival no sale. Sellers have option of making equivalent delivery ex vessel and/or ex store and/or shipping the nitrate for delivery under this contract to or from any port or place in the United States under the same conditions, provided that in

case of change of port from that above named sellers shall equalize freight to destination named by buyer on quantity so substituted.

"Vessel's name may be given at any time after execution of contract, sellers reserving the option of substituting with or without notice another vessel or vessels in approximately similar position. Should any vessel or vessels, before or after being named by the sellers, be lost, damaged, commandeered, diverted by government order, seized, captured, or delayed, before or after sailing, a reasonable time is to be allowed sellers to substitute another vessel or sellers may at their option cancel portion so affected. Notice of such substitution or cancellation shall be given by sellers to buyer and such right of substitution includes resubstitution with notice.

"In the event of any damage to, jettison, or loss of cargo of a vessel named under this contract at sea or otherwise in transit, or discharging, the quantity originally named to buyers per such vessel is to be reduced in the same proportion as the entire quantity of the same grade which has been shipped by such vessel is reduced by such damage, jettison, or loss, provided the balance of the cargo is brought forward to destination for sellers' account; subject always to sellers' right of apportionment in case of deficiency in quantity as above provided and to sellers' right to supply any deficiency from this or other vessels in approximately similar position or ex store.

"Nitrate to be taken by buyer at port of arrival or place when ready for delivery, ex vessel and/or ex store as above, in single bags in customary good order. Buyer to give shipping instructions promptly after notice of time of expected arrival. Failure to give prompt shipping instructions may, at sellers' option be deemed refusal to take the nitrate. Wharfage and transfer charges, if any, at port of arrival shall be for account of buyer.

"Each lot shall be considered a separate sale or contract, but sellers have and retain a continuing lien for the purchase

price upon all nitrate of soda covered by this contract, with the right, in case any lot shall not be paid for in accordance herewith, to cancel this contract as to such lot or as to any other than undelivered lot or lots or portion of this contract or any other contract outstanding with buyer above named.

"The nitrate delivered under this contract is to be paid for in cash, in New York City, in New York funds, in United States gold or its equivalent in currency. Any assessment or change of export or import duty or tax on the merchandise covered by this contract shall be for account of buyer and shall be added to the purchase price.

"In case performance by sellers shall be delayed or rendered impossible by force majeure, including war, government authority, embargoes, prohibition of or restriction upon exports or imports, civil commotions, labor difficulties, accidents, loss or damage by act of God or the elements, interferences with tonnage or transportations, closing or interruption of customary short routes of transportation (including closing of Panama Canal) or any other contingency beyond sellers' control, and whether herein specifically enumerated or not, in connection with the production, refinement, or transportation of the nitrate of soda covered by this contract, expected arrival shall be extended for a period equal to the duration of the contingency and for a sufficient time thereafter in which to make shipments. Sellers shall in no event be held responsible for any contingency beyond their control whether herein specifically provided for or not.

"War risk insurance for account of buyers. * * *"

We print this contract, not as the actual contract which was delivered to Thomas, but as being a similar contract to the one which was delivered to Thomas.

### JUDGE'S CHARGE

"Mr. Foreman and gentlemen of the jury: This is a suit on the part of H. H. Anderson, upon a note dated May 24, 1920, payable to Freeman-Moore Company, and signed by J. W. Thomas, deceased, and the note was later transferred

to H. H. Anderson, the plaintiff in this action. Now the plaintiff alleges that he is the owner and holder of the note, and that he got it in due course as an innocent purchaser, without notice of any defects, and before maturity. The defendants admit that Jonas W. Thomas did sign a certain paper, some written obligation similar in character to the one set out in the complaint, but do not have sufficient knowledge and demand strict proof of the same. They allege, on information, that, on account of matters and things set forth in the answer, the paper so signed does not and did not possess any legal binding force. They also allege there was no consideration for the note, and, for a further defense they allege that it was given for the future delivery of a product known as mineral product, which contract would be denounced by the statute, which you heard read in your presence.

"Now, I charge you, gentlemen, that if you find—I charge you this as a matter of law, as a matter of fact, that this note was given for the future delivery of mineral products, to wit, nitrate of soda. Then that brings us within the contracts or notes that are denounced by the statute as void and uncollectable, it makes no difference into whose hands it might fall, or how innocent the purchaser may be. In the inception of the note, any contract or note given for the future delivery of a product known as a chemical compound, or a chemical product, and I charge you, as a matter of law, that nitrate of soda is that kind of product, mineral product. Any contract or note given for that is illegal, *ab initio,* in the beginning, from the start it is void, unless it appears that at the time the contract was made the intention of both parties was that the product or material was to be delivered by the seller, and was to be accepted in kind by the purchaser, then it becomes a binding contract, and the person who signed it must pay, or his estate. I charge you, as a matter of law, that if you find that the fertilizer was actually delivered, that, of course, takes if out of the way of any contention that it

was a gambling or illegal contract, and if you find that delivery was actually made to W. J. Thomas, and that he received the benefit of the soda, then his estate must pay, and your verdict will be for the plaintiff.

"Now, it is the burden of the plaintiff in this case, the law places upon him the burden to prove, by the preponderance of the testimony, not beyond a reasonable doubt, not necessarily by the greater number of the witnesses, that at the time of the giving of the note, that at the time of the making of the note, J. W. Thomas intended to accept the fertilizers in the future, and that the parties making the sale did agree to deliver, actually intended to deliver the fertilizers. If you find that that has been shown by the preponderance of the testimony by the plaintiff, then he is entitled to recover, whether the fertilizer was actually delivered or not.

"You will notice, gentlemen, that this is a note for $500, and it is date the 24th of May, 1920, and bears interest at the rate of 8 per cent, before maturity, and becomes due May 24, 1921. It is agreed also that a 10 per cent. attorney's fee should be paid if collected by suit or through an attorney. So if you find for the plaintiff, the plaintiff is entitled to a verdict for $500, plus interest from the 24th of May, 1921, to the present time, plus 10 per cent. of the full amount as attorney's fees. If you find that the plaintiff is not entitled to recover, then your verdict will be, 'We find for the defendant.'

"Therefore, the form of your verdict will be, 'We find for the plaintiff so many dollars,' writing it out in words and not in figures, or, 'We find for the defendant,' Whatever your verdict you find, write it out on the piece of paper called the summons and complaint, sign your name, and add the word foreman under it."

### DEFENDANTS' THIRD EXCEPTION

"Third: That his Honor, the Presiding Judge, committed error in the following portion of his charge to the jury, to wit: 'I charge you, as a matter of law, that if you find that

the fertilizers was actually delivered, that, of course, takes it out of the way of any contention that it was a gambling or illegal contract, and if you find that the delivery was actually made to J. W. Thomas, and that he received the benefit of the soda, then his estate must pay, and your verdict will be for the plaintiff.'

"The error in this charge was: (1) That the sole inquiry for the jury was as to the intention of the parties respecting delivery at the time of the transaction, and that no subsequent delivery of the soda would take the case out of the statute. (2) Because there was no proof offered in this case that a delivery of the soda was actually made by the Freeman-Moore Company or any one else. (3) Because this was not a suit for the purchase price of soda, but was only a suit based on a note given for the supposed profit of a contract contemplating the sale of nitrate of soda for future delivery. (4) The Freeman-Moore Company merely undertook to sell its rights under certain contracts for future delivery to J. W. Thomas, and took the note of the latter for their supposed profit under the contract; consequently, the question as to the actual delivery of soda by the importers was not involved in this case, and it was not an action for the purchase price, hence his Honor, the presiding judge, committed error in the above-quoted charge to the jury."

### "ERROR IN CHARGE

"Judge Sease charged the jury as follows:

" 'I charge you, as a matter of law, and if you find that the fertilizer was actually delivered, that, of course, takes it out of the way of any contention that it was a gambling or illegal contract, and if you find that the delivery was actually made to J. W. Thomas and that he received the benefit of the soda, then his estate must pay, and your verdict will be for the plaintiff.'

"This charge of Judge Sease would supply a lack of proof of the intention of the parties at the inception of the

contract by proof of their conduct subsequent to the making
of the contract. It seems to us that Chief Justice McIver
passed upon this exact situation, in the case of *Riordan v.
Doty,* 50 S. C., 545, when he said:

" 'The fact that after the contract was made the seller
chose to deliver the cotton, as in the case of Hopkins,
Dwight Company, does not fulfill the requirement of the
statute. As we understand it, in these dealings in 'cotton
futures,' as it is called, the seller may, if he choses, actually
deliver the cotton contracted to be sold within the time speci-
fied, or if he prefers may accept or pay, as the case may be,
the difference in the price, and so the buyer may, if he
chooses, demand actual delivery, or accept or pay, as the case
may be, the difference in price. It was probably for this
reason that the provision was inserted in the statute requir-
ing plaintiff, when he seeks to enforce a contract for the fu-
ture delivery of cotton or any claim or demand founded upon
such a contract, to show affirmatively that, at the time when
the contract was made, the facts or either one of them es-
sential to his recovery then existed. At all events, such is
the requirement of the statute, and it must be enforced by
the Court.' "

*Messrs. McColl & Stevenson,* for appellants, cite: *Validity
of contract of sale of goods for future delivery:* Civ. Code,
1922 Sec. 5165; 50 S. C., 537; 45 S. C., 344. *Same; inten-
tion of original parties determines validity:* 115 S. C., 99;
107 S. C., 332; 104 S. E., 305. *Notes given on wagering
contract void:* Civ. Code, 1922, Sec. 5169. *Note void ab in-
itio void in hands of bona fide holder:* 133 S. E., 617; 132
S. E., 617; 26 S. C. L., 224; 9 S. C. L., 200; 2 S. C. L., 23;
122 Ky., 677; 97 S. W., 353; 11 L. R. A., 207; 7 L. R. A.,
1918; 8 A. L. R., 309; 8 C. J., 768; 3 R. C. L., 910. *Bur-
den of proving validity of contract of sale of goods for
future delivery:* Civ. Code, 1922, Sec. 5166; 115 S. C., 99;
107 S. C., 332.

*Mr. Joe P. Lane,* for respondent, cites: *Validity of contract for sale of goods for future delivery:* Civ. Code, 1922, Sec. 5165. *Burden of proving validity of contract of sale of goods for future delivery:* Civ. Code, 1922, Sec. 5166. *Notes given on wagering contract void:* Civ. Code, 1922, Sec. 5169. *Note founded on illegal contract enforcible by bona fide holder:* 133 A. S. R., 1042; 112 A. S. R., 370; 24 L. R. A., 280; 17 L. R. A., 595; 52 F., 191; 3 R. C. L., 1018. *Cases distinguished:* 112 A. S. R., 370; 84 A. S. R., 297; 80 A. S. R., 916; 72 A. S. R., 420; 10 A. S. R., 23; 3 R. C. L., 1018. *Case before enactment of N. I. L. distinguished:* 3 Brev., 54. *Statute inconsistent with earlier one impliedly revokes latter:* 89 S. C., 374; 83 S. C., 426; 110 S. E., 810; 108 S. E., 186; 104 S. E., 182. *Holder in due course takes note free of defects:* Civ. Code 1922, Sec. 3708. *Future contracts good in themselves:* 6 R. C. L., 780. *Forged instrument void:* Civ. Code, 1922, Sec. 3674. *Defective title defined:* Civ. Code, 1922, Sec. 3706. *Where N. I. L. inapplicable law merchant governs:* Civ. Code, 1922, Sec. 3847. *Testimony as to intention of parties sufficient to go to jury:* 114 S. C., 464; 98 S. C., 282; 12 R. C. L., 753.

December 10, 1926.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE C. J. RAMAGE.

This case was begun by the service upon J. W. Thomas, deceased, of the summons and complaint, and the defendant, J. W. Thomas, duly filed his answer. Thereafter J. W. Thomas died, and an order was taken substituting, as parties defendant, his legal representatives, and an order was duly taken permitting the substituted defendants to file an amended answer. The case came on for trial before his Honor, Judge Sease, and a jury. Motions for nonsuit and directed verdict were both made and overruled. The case was submitted to a jury, and a verdict was rendered for the full amount sued for.

The complaint is in the usual form and sets forth that

J. W. Thomas made his promissory note, bearing date the 24th day of May, 1920, whereby he promised to pay to Freeman-Moore Company the sum of $500.00 one year from said date; that plaintiff is the holder of the said note in due course, and is the legal owner of the same, and asks for judgment for the amount of the same. The defendants in the amended answer set out that the said note is void by reason of the fact:

"That the said paper was given by J. W. Thomas, deceased, to Freeman-Moore Company in pursuance of an agreement whereby there was to be sold or transferred at some future time to J. W. Thomas, certain mineral products, and that said transaction, as entered into, had no legal effect or force, and that the said paper, alleged to have been signed by J. W. Thomas and set up in the complaint, was utterly void and of no effect."

The note, charge of His Honor, and the "Contract for South America Nitrate of Soda" will be set out in the report of the case and need not be repeated here.

The Court below tried the case under the following section:

"(51666) Sec. 2. In any and all actions brought in any Court to enforce such contracts, bargains, or agreements, or to collect any not or other evidence of indebtedness, * * * the burden of proof shall be upon the plaintiff to establish that at the time of making such contract, bargain or agreement, * * * it was the *bona fide* intention of both parties * * * that the said certificate, bond, or other evidence of debt, cotton, grain, meats, or other animal mineral or vegetable product so agreed to be sold and transferred should be actually delivered and received in kind by the said parties at the future period mentioned therein."

His Honor, Judge Sease, submitted the issues as set forth in the said section fairly to the jury, as an inspection of his charge set out will show. The se-

rious question before this Court is, Was there sufficient evidence to carry the issue to the jury?

We find the following in the report of the case:

"J. W. Freeman testified that there was no delivery at the time.

"The Court: He wants to know when was the guano to be delivered. A. I don't know.

"Q. Was it at a future time? A. Yes, sir.

"Q. Is there any doubt about that? A. I don't think so; no, sir.

"The Court: When do people usually use that nitrate of soda in this country? A. May, June, and July.

"The Court: I notice that note is dated the 24th of May.

\*   \*   \*

"Q. Were you familiar with parties who made those contract? A. I don't remember who made that certain contract; we handled stuff along about that time.

"Q. Was Jonas Thomas a large farmer? A. I think so.

"Q. Was he using soda? A. Yes, sir.

"Q. In connection with his farming operations? A. Yes, sir.

"Q. Do you have any reason to doubt that he had the intention of receiving soda itself when he made that contract? A. No, sir.

"Q. Do you know what his intention was? A. No, sir.

"The Court: Ask him whether or not the soda was actually delivered.

"The Witness: I don't know; we had nothing to do with it after we transferred the contract. It was up to him to order it out, when it was to be shipped; we had nothing to do with it. \* \* \*

"Q. And that contract contemplated a future delivery of soda? A. Yes, sir.

"Q. You say that it is a fact, that they [Grace & Co.] are importers of soda? A. That is what I understand."

On refusing a nonsuit, his Honor said:

"I think there is testimony to go to the jury on the question of intent. There is testimony that Thomas was a large farmer and user of fertilizer; there is testimony that Duvall & Grace were importers, and this contract was one or the other; anyhow, they were sellers and deliverers of nitrates in this country. I am going to leave it to the jury to say what was the intent of the parties at the time."

We find the following in the testimony of Kenneth Mc-Coll:

"Q. Mr. McColl, Jonas Thomas was engaged in large farming operations in 1920, was he not? A. Yes, sir.

"Q. He used a reasonable amount of fertilizers, nitrate of soda, in his operations? A. I would say so; yes, sir.

Testimony of Grace Kennedy:

"My father, J. W. Thomas, got a large contract of soda from W. R. Grace & Co., originally, I don't remember just who he bought from; I don't remember whether he bought direct or not; * * * he always bought about a year ahead.

"Q. He got soda on both of these contracts, didn't he? A. Yes, sir; they were delivered in 1921. * * *

"Q. When your father entered into a contract of this kind, he intended to get the soda, didn't he? A. Sure he did.

"Q. Because he wanted the soda, he had to have it, didn't he? A. He wanted it.

"Q. When he made a contract like this he did it because he wanted the soda? A. Yes, sir.

"Q. And he expected to get it, didn't he? A. Yes, sir. He expected to get the soda.

"Q. Your father was not a gambler, was he? A. No, sir. * * *

"Q. Didn't your father deal year after year with contracts similar to that with W. R. Grace & Co.? A. Yes, sir.

"Q. Didn't he always get his soda from W. R. Grace &

Co. and didn't he always take it?   A. Yes, sir; when it was delivered."

This being a money demand, it was triable by a jury under the Code of Procedure.   His Honor submitted the issues to the jury in a short, clear, and able charge that left no room for any doubt.   We do not see where the defendants can complain, as all their rights were amply saefguarded by the Court.   It seems clear that, from an inspection of the form of contract used in this case and from all the testimony, there was sufficient to sustain the verdict of a reasonable and fair jury that plaintiff had made out his case by the greater weight of the testimony on the question of intent.

We do not think his Honor erred in charging that, if the fertilizer was actually delivered, this fact would take the contract out of the way of any contention that this was a gambling contract.   We think there was testimony here that would, perhaps, make that charge applicable to the case.   But, in any event, the defendants have failed to show wherein they were harmed by this charge of his Honor.   Under no view of the case can we see where any harm could result to defendants before any reasonable and sensible jury.

The point is further made that plaintiff, in order to come in under the statute above set out and under which his Honor submitted the case to the jury, ought, in the first instance, to have set out the facts relied on to sustain the note, in the complaint.   We do not think that this was necessary in this case.   The note was a plain obligation on its face and, if nothing else had appeared, would have justified judgment against the defendants.   But defendants themselves raised the question of the legality of the note by their answer in the case.

When the answer set up the defense that the note was void, then section 431 of the code of Civil Procedure applied.

"But the allegation of new matter in the answer, not re-

lating to a counterclaim, or of new matter in a reply, is to be deemed controverted by the adverse party as upon a direct denial or avoidance, as the case may require."

The following cases show that the defense set up in the answer in this case under the law made an issue for trial. *Craig Milling Co. v. Cromer,* 85 S. C., 350; 67 S. E., 289. *Hubbell v. Courtney,* 5 S. C., 87. *Geiger v. Kaigler,* 15 S. C., 262. *Simpson v. Ins. Co.,* 59 S. C., 195; 37 S. E., 18. *Bank v. Gadsden,* 56 S. C., 313; 33 S. E., 575.

It appears to us, under the charge of his Honor and under the testimony and pleadings, that no reversible error has been made in this case. The issues were narrowed to the very point in the case, and there is evidence to sustain the finding of the jury.

It is the judgment of this Court that all the exceptions be dismissed and that the judgment below affirmed.

MESSRS. JUSTICES WATTS, BLEASE and STABLER concur.

COTHRAN, J. (dissenting). I think that the charge referred to in the third exception was directly in conflict with the case of *Riordan v. Doty,* 50 S. C., 537, at page 545, and constitutes reversible error. Let the exception and the quotation from that case in appellants' argument be reported.